UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SONJA M. GONZALEZ,

    Plaintiff,

    v.

PIERCE COUNTY, a municipal corporation, et al.,

    Defendants.

Case No. C04-5303RJB

ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 25. The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

PROCEDURAL AND FACTUAL BACKGROUND

On May 25, 2004, plaintiff Sonja Gonzalez filed suit against Pierce County and Pierce County Deputy Sheriff Robert Blumenschine alleging eight causes of action: (1) a 42 U.S.C. §1983 action, claiming that her Fourth Amendment constitutional right against unreasonable seizure was violated; (2) a 42 U.S.C. §1981 action, claiming that she was denied equal protection of the law because of her race; (3) a 42 U.S.C. §1985 action, claiming that Pierce County and Deputy Blumenschine conspired to deprive her of equal protection of the law; (4) a state law action against Pierce County, claiming negligent supervision, retention and hiring; (5) a state common law action against Deputy Blumenschine for assault and battery; (6) a state common law action against the deputy for false arrest and imprisonment; (7) a state common law action against all defendants for the negligent infliction of

emotional distress; and (8) a state common law action against all defendants for the intentional infliction of emotional distress. Dkt. 1. (See Complaint).

On July 15, 2005, defendants filed a motion for summary judgment, contending that (1) plaintiff's claims under 42 U.S.C. § 1983 should be dismissed because there was probable cause to arrest her pursuant to RCW 9A.76.020 for obstructing a law enforcement officer; there was probable cause to arrest her pursuant to RCW 9A.76.050 for rendering criminal assistance; and plaintiff cannot satisfy the requirements for stating a claim for use of excessive force; (2) plaintiff has not stated a claim for municipal liability for her claims under 28 U.S.C. § 1983; (3) plaintiff's claim against Deputy Blumenschine under 42 U.S.C. § 1981 should be dismissed because there is no evidence that her race was a factor in her arrest, or that the officer had a racially discriminatory motive or intent to discriminate against her on account of her race; (4) plaintiff's claim under 42 U.S.C. § 1981 against Pierce County should be dismissed because there was no government policy in place promoting racial discrimination; (5) plaintiff's claim under 42 U.S.C. § 1985 should be dismissed because this claim cannot survive if the Section 1983 claims are dismissed; and because plaintiff has failed to set forth any facts that a conspiracy existed; (6) plaintiff's state law claim for assault and battery should be dismissed because Deputy Blumenschine did not have the requisite intent to harm or offend, and there is no evidence that he made contact with or touched plaintiff; (7) plaintiff's claim for false arrest and imprisonment should be dismissed because there was probable cause to arrest her; (8) plaintiff's state law claim for negligent supervision, retention, and hiring should be dismissed because plaintiff cannot show that Deputy Blumenschine acted outside the scope of his employment; that he posed a risk of harm to plaintiff; and that Pierce County knew or should have known that he posed such a risk; (9) plaintiff's claim for intentional infliction of emotional distress should be dismissed because Deputy Blumenschine's conduct was not extreme and outrageous, and he did not intentionally or recklessly inflict emotional distress on plaintiff; (10) plaintiff's claim for negligent infliction of emotional distress should be dismissed because Deputy Blumenschine and Pierce County did not owe plaintiff a duty to protect her from emotional distress; plaintiff has not produced evidence sufficient to show that defendants breached that duty; and plaintiff has not shown sufficient damage or injury to

1  state a claim. Dkt. 25. Defendants also request that the court dismiss Does 1-5, named as defendants
2  in the complaint. *Id*. at 24.

### RELEVANT FACTS

On August 8, 2002, a homicide was committed in Tempe, Arizona. *See* Dkt. 25, Ex. A, at 71. A prominent businessman had been murdered and a number of expensive and distinct pieces of jewelry stolen. Arizona detectives had identified Robbie Lemke as a suspect and were pursuing more information about him. *Id.* at 72. Since Mr. Lemke had only fairly recently moved to Arizona from Tacoma, they decided to contact some of Mr. Lemke's friends in Washington State, including plaintiff's son, Fred Gonzalez, a long-time friend of Mr. Lemke's. *Id.* at 13, 73. They learned that Mr. Lemke returned to Washington State after the homicide and that he and Mr. Gonzalez, along with several other mutual friends, had recently socialized. The Arizona detectives also had information that Mr. Gonzalez had been present when Mr. Lemke displayed and spoke of the stolen jewelry.

Mr. Gonzalez has had several juvenile felony convictions, including robbery, and he had served time as an adult in Walla Walla State Penitentiary for unlawfully possessing a firearm as a convicted felon. *See* Dkt. 25, Ex. B, at 34. At the time of the incident at issue in this case, Mr. Gonzalez had an outstanding felony warrant for failing to appear for a violation hearing, in addition to several outstanding misdemeanor warrants for minor offenses. *Id.* at 82.

In August of 2002, Arizona detectives Perkovich and McGowan came to Tacoma to speak with Mr. Gonzalez and other associates of Mr. Lemke. On August 24, 2005, detectives Perkovich and McGowan met at Bethel high school with Pierce County Sheriff's Department Deputies Robert Blumenschine and Jennifer Eldridge, and a Department of Corrections (DOC) Officer. *See* Dkt. 25, Ex. A, at 28 and Ex. C, at 18. The meeting was to discuss how they were going to find and speak with Mr. Gonzalez about the homicide. The Arizona detectives planned that the Pierce County Deputies and the DOC officers would make the first contact and they would arrive on the scene later. *See* Dkt. 25, Ex. A, at 29.

Mr. Gonzalez used his mother's address as his permanent address. Plaintiff is an African-American woman; her deceased husband was of Puerto Rican descent. Shortly before August 24, 2005, Mr. Gonzalez told plaintiff that law enforcement officers wanted to talk with him about

something Mr. Lemke may have done in Arizona, and told her to leave a message for him at his girlfriend's number when officers contacted him so that he could go to his mother's house and speak with the officers. Dkt. 29, at 2.

Deputies Blumenschine and Eldridge, and the DOC officer, made their way to plaintiff's address in three separate cars to contact and serve the arrest warrants on Mr. Gonzalez. Dkt. 25, Ex. D, at 37. When the officers arrived at the house, plaintiff was outside talking to a neighbor. Plaintiff stated that two Pierce County deputies and a DOC officer dressed in SWAT gear approached her, and that Deputy Blumenschine said: "Warrant Frederico!" Dkt. 29, at 2. Because Mr. Gonzalez' name is Fred, not Frederico, plaintiff was confused at first, but that, after she realized that Deputy Blumenschine meant her son, she identified herself as Mr. Gonzalez' mother. Dkt. 29, at 2-3.

Deputy Eldridge told plaintiff why they were there and that they had a warrant for her son's arrest. Dkt. 25, at 39 and 42. Plaintiff stated that she told the officers that Mr. Gonzalez was not there and did not live with her, and that if Deputy Blumenschine did not believe her, he could go inside and look. Dkt. 29, at 3. The officers entered and searched the home and confirmed that Mr. Gonzalez was not there.

Deputy Blumenschine stated in his deposition that, after the search was concluded, plaintiff's demeanor changed, from being compliant to being upset. Dkt. 25, Ex. D, at 49. Deputy Blumenschine stated that plaintiff began yelling at the officers, asking them what gave them the right to be there. *Id.* at 49-50. Plaintiff stated that she was confused by some of the information from the officers regarding Mr. Gonzalez' outstanding warrants. Dkt. 29, at 3-4. The DOC officer asked plaintiff where her son was and if she had a phone number for him. Dkt. 25, Ex. D, at 54. The officers stated in their depositions that plaintiff said that she was going to call her son. *Id.* at 57, and Dkt. 26, Ex. E, at 2. Plaintiff stated that she told the officers that she would call Mr. Gonzalez and have him come over to her house. Dkt. 29, at 4. Officer Eldridge stated in her deposition that the officers asked her not to call him, and to give them Mr. Gonzalez' number so they could call him, but she refused to give them either the phone or the number. Dkt. 25, Ex. C, at 24. Instead, the officers stated that plaintiff quickly picked up the cordless phone in the kitchen, dialed it, said something to the effect that "there are four cops here and they want to talk to you", and quickly hung up the phone. Dkt. 26, Ex. E, at 2,

ORDER
Page - 4

and Ex. F, at 2; Dkt. 25, Ex. C, at 24 and 25. When plaintiff got off the phone, she told the officers that Mr. Gonzalez was going to come over. *Id.* at 25; Dkt. 29, at 4. Deputy Eldridge stated that, after plaintiff called Mr. Gonzalez, she started to pace and become agitated. Dkt. 26, Exh. E, at 2. The officers again asked for the phone number, and she refused, stating "He'll be here." Dkt. 25, Exh. C, at 26.

Deputy Eldridge stated that, because the officers were concerned that Mr. Gonzalez was not going to show up after plaintiff called him, they started asking plaintiff for more information–where he lived and what kind of car he drove–and repeatedly asked her for the phone number. Dkt. 26, Exh. E, at 3. Deputy Eldridge stated that plaintiff started screaming at the officers, that they tried to calm her down by talking to her calmly. *Id.* Plaintiff, on the other hand, stated that, as the officers waited for Mr. Gonzalez, Deputy Blumenschine and the DOC officer became increasingly agitated, that Deputy Blumenshine "jabbed his finger into my face and yelled at me to 'Shut up and sit down!'"; and that his face became very red and she began to feel that he was out of control. Dkt. 29, at 5; Dkt. 31, Exh. A., at 80.

Deputy Eldridge stated that Deputy Blumenschine explained to plaintiff what obstructing a law enforcement officer was, that she was obstructing them, and that they could arrest her if she did not provide them with the information they were requesting. *Id.* The arrest report stated that plaintiff responded, " Yes! I guess you'll just have to arrest me." Dkt. 26, Ex. G.

The timing of the handcuffing and the arrest is disputed. Defendants' version of the events is as follows: Deputy Lynelle Kern arrived on the scene to assist the officers in arresting plaintiff. Dkt. 25, Ex. H, at 14. Deputy Blumenschine handcuffed plaintiff and she was arrested for obstructing an investigation. Dkt. 25, Exh D, at 62, 66, and 79. The officers stated that, after plaintiff was handcuffed, Deputy Eldridge picked up the phone that plaintiff had used to call Mr. Gonzalez and pressed the re-dial button. She was able to view the number that the plaintiff had entered, but when she tried to redial, the call would not go through. Dkt. 25, Ex. C, at 32. She then heard a beeping noise coming from a second phone in a bedroom. Deputy Eldridge went into the bedroom and found that the phone in the bedroom was off the hook. Earlier, after plaintiff had allegedly called her son, Deputy Eldridge recalled that the plaintiff had gone into the bedroom. Dkt. 26, Exh. E, at 2-3.

Deputy Eldridge suspected that plaintiff was attempting to signal her son that the officers were still at the house, supporting her suspicion that plaintiff was attempting to render criminal assistance. Dkt. 26, Exh. E, at 3. Deputy Eldridge stated that she gave the number plaintiff had called to the DOC officer, who called the number and left a voice message stating that plaintiff had been arrested. Dkt. 26, Ex. E, at 3. Neither Deputy Eldridge nor the DOC officer is a defendant in this case. Deputy Eldridge stated that plaintiff's younger son had also recited the phone number to her. *Id.* Mr. Gonzalez arrived at the house and was arrested by Deputy Kern. Dkt. 26, Ex. H, at 27.

Plaintiff contends that she was not handcuffed nor arrested until after her son arrived at the house. Dkt. 29, at 6. She denied that she went to the bedroom and removed the receiver from the telephone. *Id.*, at 5.

Plaintiff was later transported to the Pierce County Jail by Deputy Blumenschine. Deputy Kern conducted the search or "pat down" of plaintiff prior to her being placed in Deputy Blumenschine's patrol car. Dkt. 25, Ex. D, at 79, 80. Pursuant to department policy, plaintiff remained handcuffed while being transported to jail. *Id*. at. 82. Plaintiff claims that Deputy Blumenschine inappropriately rubbed against her breast while buckling her into the seat belt, but that this had it seemed unintentional or an accident when they were at the residence. Dkt. 25, Ex. B, at 110; Dkt. 29, at 7. She stated that, after they had arrived at the sheriff's station, "he again deliberately rubbed his arm against my breast. He first reached into the car with his left arm and rubbed it against my breast. He then removed his left arm and reached around me with his right arm and unbuckled my seatbelt." Dkt. 29, at 7. Internal investigations officer Tim Kobel stated in his deposition that plaintiff told him that, when she was being strapped into a patrol car, "she believed the officer involved in her arrest purposefully took his hand and brushed it across her breast." Dkt. 31, Exh. B, Kobel Dep., at p. 1. Deputy Eldridge was standing next to Deputy Blumenschine when he placed plaintiff into the car and did not observe anything inappropriate when Deputy Blumenschine placed plaintiff in the car. Deputy Blumenschine does not recall touching Sonja's breast, either time, even unintentionally. Dkt. 25, Ex. C, at 40, and Ex. D, at 83- 84.

Mr. Gonzalez and plaintiff were transported and booked into the Pierce County Jail. Plaintiff was released on bail approximately seven hours later. No charges were filed in the case.

Plaintiff later spoke to a friend, Alton McDonald, who called the Sheriff's Department. As a result of that call, the Sheriff's Department initiated an internal investigation. All parties were interviewed and, following an investigation, the allegations against Deputy Blumenschine were determined to be "not sustained." Dkt. 26, Ex. I, Memo. dated 12/10/02.

All Pierce County Sheriff deputies, including Deputies Blumenschine, Kern and Eldridge, receive annual training which includes racial profiling training. Dkt. 25, Ex. D., at 26, and Ex. C, , at 42. In the racial profiling training, officers learn how to recognize and avoid racial profiling and discrimination based on race during the performance of their duties. *See* Dkt. 26, Ex. K, Pierce County Racial Profiling Policy.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the

nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

**1. Report of D.J. Van Blaricom**

In connection with this litigation, plaintiff retained the services of D.P. Van Blaricom, who stated in his report that he is a "Police Practices Expert." Dkt. 30, Exh. 6. Plaintiff submitted this report in support of her response to defendants' motion for summary judgment. Portions of Mr. Van Blaricom's deposition have also been submitted by plaintiff (Dkt. 30, Exh. 7) and defendants (Dkt. 31, Exh. C). Mr. Van Blaricom concluded in relevant part the following:

> Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered opinion that there was not probable cause to arrest plaintiff for the crime of *"obstructing"*.
>
> * * * * * ** * * * * *
>
> Based upon my training, experience and a careful evaluation of the totality of circumstances in this matter, it is my considered opinion that it is the policy, custom and practice of the PCSD to make arrests without probable cause.

Dkt. 30, Exh. 6, at 2 and 3. *Emphasis in the original*.

In deciding whether to admit scientific testimony or evidence, the trial judge must ensure that any and all scientific testimony or evidence admitted is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science--the focus is on principles and methodology, not conclusions. *Id.,* at 595-96. In *Daubert*, the Supreme Court listed four non-exclusive factors for consideration in the reliability analysis: (1) whether the scientific theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999), the Supreme Court extended *Daubert's* standard of evidentiary reliability to all experts, not just scientific ones. That standard requires a valid connection to the pertinent inquiry as a precondition to admissibility. *Id.* Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. *Id.*

Mr. Van Blaricom's opinion does not meet the standard of evidentiary reliability in this case. The theory or technique he used to reach his conclusion is unclear, and there is no showing that it has been, or can be, tested. There is no showing that the theory or technique has been subjected to peer review or publication, or whether it has a rate of error. There is no showing that the theory or technique is generally accepted in the law enforcement community. In light of *Daubert* and *Kumho Tire*, it simply not sufficient for a qualified expert to render an opinion based on an *ipse dixit* analysis. Van Blaricom's opinion appears and to be legal argument rather than expert analysis. It is not helpful to the court on this matter, and certainly, by itself, does not raise issues of fact.

**2. Claims Against Officer Blumenschine Under 42 U.S.C. § 1983**

*Arguments of the Parties.* Defendants contend that plaintiff's Section 1983 claims should be dismissed because there was probable cause to arrest her pursuant to RCW 9A.76.020 for obstructing a law enforcement officer; there was probable cause to arrest her pursuant to RCW 9A.76.050 for rendering criminal assistance; and plaintiff cannot satisfy the requirements for stating a claim for use of excessive force.

Plaintiff maintains that her failure to provide the officers with a telephone number does not provide probable cause to arrest her for obstructing justice or rendering criminal assistance; that there was no probable cause to arrest her after Mr. Gonzalez arrived at the house, because he had arrived at the house as she told them he would; and that the officers used excessive force when they handcuffed plaintiff tightly in front of three young children, even though she was cooperative and hospitable to the officers. Dkt. 28.

*Legal Standard.* In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2)

the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

*Arrest Without Probable Cause*. The first issue is whether Deputy Blumenschine violated plaintiff's Fourth Amendment rights by arresting her without probable cause.

The Fourth Amendment guarantees people the right to be free from unreasonable search and seizure. Police may arrest a person without a warrant if the arrest is supported by probable cause. *See United States v. Hoyos*, 892 F.2d 1387 (9th Cir. 1989). Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime. *United States v. Garza*, 980 F.2d 546, 550 (9th Cir.1992) (Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime."). *United States v. Hoyos*, 892 F.2d at1392. It does not matter if later the arrestee turns out to have committed a completely different crime or the arresting officer mis-identified the offense. *Devenpeck v. Alford*, 125 S.Ct. 588, 593 (2004).

Plaintiff was arrested for obstruction of justice, RCW 9A.96.020. A person violates RCW 9A.76.020 if he or she "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." Merely refusing to answer an officer's questions by itself is not obstruction. *State v. Contreras*, 92 Wn.App. 307, 316 (1998). But flight, physical resistance, refusal to obey an officer's order to return to a car, fleeing, or providing false information, do provide bases to arrest for this crime. *State v. Contreras*, 92 Wn.App. at 316-17; *State v. Hudson*, 56 Wn.App. 490, 497-98 (1990) (suspect's flight from police hindered or delayed investigation); *State v. Little*, 116 Wn.2d 488, 497 (1991) (defendant's refusal to stop when requested by police hindered investigation). Providing false information hinders an investigation. *State v. Contreras*, 92 Wn.App. 307, 317 (1998). Intent to hinder, delay or obstruct is not a statutory element of the crime. *State v. Hudson*, 56 Wn.App. 490, 496 (1990).

While the court concurs with plaintiff that she could not be arrested simply for failing to provide the police with information, she did much more than that here. She called her son and talked with him. "I said, Fred, there's some deputies here. They say they have a felony warrant for your arrest. You need to come home, you know, right away." Dkt. 31, Exh. A., Gonzalez Dep., at p. 64. While plaintiff may well have been sincere in her belief that her phone call to her son was merely to tell him that the police were there and that he was to come over to her house, the officers could reasonably have interpreted the phone call differently. The officers were engaged in an investigation of a serious crime, a murder. They had reason to believe that Mr. Lemke was in the area and that Mr. Gonzalez had been in contact with him. The officers did not know what Mr. Gonzalez would do if he were alerted to their presence: he might flee, or come to the house–with or without Mr. Lemke or other people–or arrive with weapons, or take the officers by surprise and put their lives in danger. The officers asked plaintiff for the phone number so that they could call Mr. Gonzalez, rather than have her call him. Dkt. 31, Exh. A, at 64. Once plaintiff called her son, it was objectively reasonable for the officers to request that she permit the DOC officer to talk with Mr. Gonzalez, as they did (Dkt. 31, Exh. A., at 65), or give them the phone number so that they could talk with him themselves. Her failure to comply with their requests is not a simple failure to cooperate in an investigation. Plaintiff set in motion the events that made the requests reasonable. Her failure to comply with those requests constituted probable cause to arrest her for willfully hindering, delaying, or obstructing a law enforcement officer in the discharge of his or her official powers or duties, in violation of RCW 9A.96.020. At the point plaintiff refused the officers' requests, there was probable cause to arrest her. It does not matter whether she was arrested before or after her son arrived.

Defendants also contend that they had probable cause to arrest plaintiff for obstructing when Officer Eldridge discovered the bedroom phone off the hook. Assuming that defendants are correct that plaintiff was arrested before Officer Eldridge discovered the phone, there was no probable cause to arrest her for allegedly signaling her son in this manner; the detached phone was discovered only after she was arrested. Assuming that plaintiff is correct and that she was arrested only after her son arrived–after Officer Eldridge discovered the phone–Officer Eldridge could have reasonably believed that plaintiff had tried to signal her son to stay away from her house, particularly in light of plaintiff's

1  refusal to give them Mr. Gonzalez' phone number, and the officers would have had probable cause to
2  arrest her for obstruction under RCW 9A.96.020.

3  In their reply, defendants contend that the officers are entitled to qualified immunity. Dkt. 31,
4  at 8-9. This issue was not raised in the motion for summary judgment. Accordingly, qualified
5  immunity is not presently before the court.

6  *Excessive Force.* Defendants contend that plaintiff has not set forth facts sufficient to support
7  a claim that Deputy Blumenschine used excessive force when he placed her in tight handcuffs and
8  arrested her in front of children.

9  The use of excessive force by a law enforcement officer in effectuating an arrest states a valid
10  claim under 42 U.S.C. § 1983. The threshold inquiry for such a claim is whether the force was applied
11  in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.
12  *Hudson v. McMillian*, 112 S.Ct. 995, 999 (1992); *Wilson v. Seiter*, 111 S.Ct. 2321, 2324 (1991). The
13  'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the
14  officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them,
15  without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

17  Plaintiff contends that officers used excessive force when they placed her in tight handcuffs in
18  front of children. Essentially, she argues that the arrest itself was an overreaction, in light of her
19  contention that Mr. Gonzalez had already appeared by the time she was arrested. This argument
20  relates to probable cause to arrest, not to the use of excessive force. Regarding the tight handcuffs,
21  plaintiff never complained to the officers at the scene, nor has she shown any injury or specific facts
22  that would show more than *de minimis* discomfort. *See Wall v. County of Orange*, 364 F.3d 1107,
23  1109-20 (9th Cir. 2004)(arrestee suffered injury); *LaLonde v. County of Riverside*, 204 F.3d 947, 952,
24  960 (9th Cir. 2000)(arrestee complained to officer that handcuffs were too tight and officer refused to
25  loosen them); *Palmer v. Sanderson*, 9 F.3d 1433, 1434-36 (9th Cir. 1993)(arrestee complained to
26  officer and sustained injuries); *Robles v. Prince George's County*, 302 F.3d 262, 270 (4th Cir.
27  2002)(claims for excessive force under 42 U.S.C. § 1983 not cognizable where plaintiff claims no or
28  *de minimis* injury). Plaintiff has failed to meet her burden to show that there is a genuine issue of

material fact as to whether the officers used excessive force in arresting her.  Defendants have shown that there is no issue of fact as to this claim, and  they are entitled to judgment as a matter of law dismissing the excessive force claim against Deputy Blumenschine.

### 3.  Claim for municipal liability under 28 U.S.C. § 1983

*Arguments of the Parties*.  Defendants maintain that plaintiffs have not shown that they have a policy that encouraged arrests without probable cause and the use of excessive force during arrests.  The Pierce County Sheriff's Manual § 3.02.050 states that "officers shall not make any arrest, search, or seizure which they know or reasonably should know is contrary to law or established Departmental procedures or policies."  Dkt. 26, Exh. L.  In addition, pursuant to § 3.05.010, officers are only allowed to use the amount of force "necessary to effect the lawful purpose intended."  Dkt. 26, Exh. M.

Plaintiff contends that Pierce County failed to adequately train the police regarding its policies regarding arrests; that the Sheriff ratified the unlawful arrest when he concluded after the investigation that the arrest was justified and proper under the rules and regulations of the Pierce County Sheriff's Department; and that Mr. Van Blaricom concluded that it is the policy, custom and practice of the Pierce County Sheriff's Department to make arrests without probable cause.  Dkt. 28.

*Standard for Municipal Liability*.  In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).  The municipal action must be the moving force behind the injury of which plaintiff complains.  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).  *See Jackson v. City of Bremerton*, 268 F.3d at 653 (Neither a municipality nor a supervisor can be held liable under § 1983 where no injury or constitutional violation has occurred).

*Discussion*.  The Pierce County Sheriff's Department has a policy prohibiting arrests that are contrary to law or established Departmental procedures or policies, and also has a policy allowing officers to use only the amount of force necessary to effect the lawful purpose intended.  Plaintiff has

not met her burden to show that the Pierce County has a policy or custom that violated her civil rights against arrest without probable cause or use of excessive force. Moreover, she has not shown that the Sheriff's Department ratified unlawful conduct when the Sheriff concluded, following the internal investigation, that the arrest was justified and proper under the rules and regulations of the Sheriff's Department. The single failure to discipline an officer does not rise to the level of a ratification. *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *rev'd. on other grounds*, 125 S.Ct. 596 (2004). Finally, as discussed above, Mr. Van Blaricom's report does not provide admissible expert opinion relevant to the issue of probable cause.

Plaintiff has failed to meet her burden to show a basis for municipal liability against Pierce County. Defendants have shown that there is no issue of fact as to claims under 42 U.S.C. § 1983 against Pierce County, and that they are entitled to judgment as a matter of law dismissing the claims against Pierce County.

**4. Claim against Deputy Blumenschine under 42 U.S.C. § 1981**

Plaintiff alleges that she was arrested because she is African-American or because of her Hispanic last name. Defendants contend that plaintiff's claim under Section 1981 should be dismissed because there is no evidence that her race was a factor in her arrest, or that the officer had a racially discriminatory motive or intent to discriminate against her on account of her race.

42 U.S.C. § 1981(a) confers upon all persons the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings[.]" Section 1981(a) further provides that all persons shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." In a § 1981 action, plaintiffs must show intentional discrimination on account of race. *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir.1989). In order to establish a prima facie case under § 1981, plaintiffs must prove: (1) that they are members of a racial minority; (2) that the defendants had an intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413-14 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994). To state a claim under Section 1981, there must be evidence of racial animus on the part of the defendants. *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989). The element of intentional

discrimination in a § 1981 claim is identical to the element of intentional discrimination in a § 1983 claim. *Hispanic Taco Vendors of Washington v. City of Pasco*, 790 F.Supp. 1023, 1031 (E.D. Wash. 1991), *affirmed, Hispanic Taco Vendors of Washington v. City of Pasco*, 994 F.2d 676, 679 n. 3. (9th Cir. 1993).

Plaintiff is an African-American woman, a member of a racial minority. Plaintiff stated in her deposition that she believed that if the same contact with officers happened with her Caucasian neighbor, her neighbor would not have been arrested. Dkt. 25, Ex. B, at 156. When asked about this in her deposition, she could not offer any additional evidence for her allegation. Plaintiff acknowledged in her deposition that she believed that the fact that she was arrested because of her race and her demeanor. *Id*. at158. Plaintiff has not shown any admissible evidence showing that any of the officers had an intent to discriminate against her on the basis of race when they arrested her. The mere fact that Deputy Blumenschine stated "Warrant Frederico!" to plaintiff when the officers first encountered her shows only that he may have believed it was appropriate to address her in Spanish, given her last name. This is clearly not relevant to the issue of whether he intended to discriminate against her on the basis of her race or ethnicity when he arrested her. Plaintiff's perception that her Caucasian neighbor would not have been arrested if she had been in the same circumstances is speculation, not admissible evidence in support of her claim.

Plaintiff has failed to meet her burden to show that there is a genuine issue of material fact as to whether the any of the officers involved in the incident intended to discriminate against her on the basis of race when they arrested her. Defendants have shown that there is no issue of fact as to this claim, and they are entitled to judgment as a matter of law dismissing the claim under 28 U.S.C. § 1981.

**5. Claim under 42 U.S.C. § 1981 against Pierce County**

Defendants contend that plaintiff's claim against Pierce County should be dismissed because there was no government policy in place promoting racial discrimination. Pierce County has a Racial Profiling Policy that prohibits racial profiling, and sheriff's deputies receive annual training on the policy. Plaintiffs have not shown a basis for municipal liability under 42 U.S.C. § 1981. Defendants

are entitled to summary judgment on this issue, and the claim under 42 U.S.C. § 1981 should be dismissed.

### 6. Claim under 42 U.S.C. § 1985

Defendants argue that plaintiff's claim under Section 1985 should be dismissed because this claim cannot survive if the Section 1983 claims are dismissed; and because plaintiff has failed to set forth any facts that a conspiracy existed. When a Section 1985 claim is predicated on the same allegations as is a Section 1983 claim, plaintiff must show that there are genuine issues of fact as to the Section 1983 claim. *Brew v. City of Emeryville*, 138 F.Supp.2d 1217, 1225-1226 (N.D. Cal. 2001). In this case, plaintiff has shown no genuine issues of material fact as to the Section 1983 claims. Accordingly, the claim under 42 U.S.C. § 1985 should be dismissed.

Further, to state a claim under 42 U.S.C. § 1985, a plaintiff must demonstrate race or class based animus. *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993); *Bretz v. Kelman*, 773 F.2d 1026, 1029-1030 (9th Cir. 1985). In this case, as discussed above in reference to the Section 1981 claim, plaintiff has not shown a genuine issue of material fact to support a claim that the officers intentionally discriminated against her on the basis of race. The claim under 42 U.S.C. § 1985 should be dismissed on this basis as well. Defendants are entitled to summary judgment as a matter of law on plaintiff's claims under 42 U.S.C. § 1985.

### 7. Does 1-5

Defendants also request that the court dismiss Does 1-5, named as defendants in the complaint. *Id*. at 24. The deadline for joining parties in this case was March 24, 2005. Dkt. 16. Plaintiff has not named defendants other than Deputy Blumenschine and Pierce County. The court should grant defendants' motion for summary judgment as to the unnamed defendants on the claims that are dismissed by this order.

### 8. State Law Claim for False Arrest and Imprisonment

Defendants contend that plaintiff's claims for false arrest and false imprisonment should be dismissed because there was probable cause to arrest her. Plaintiff claims that there are issues of fact as to whether there was probable cause to arrest her.

A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person. *Bender v. City of Seattle*, 99 Wash.2d 582, 590-91, (1983). False imprisonment is the intentional confinement of another person unjustified under the circumstances. *Kellogg v. State*, 94 Wash.2d 851, 856, 621 P.2d 133 (1980). The existence of probable cause to arrest is a complete defense to an action for false arrest, false imprisonment, and malicious prosecution. *McBride v. Walla Walla County*, 95 Wn.App. 33, 38, *review denied*, 138 Wn.2d 1015 (1999). Probable cause for warrantless arrests exists when an officer has reasonably trustworthy information sufficient to permit a person of reasonable caution to believe that an offense has been or is being committed. *Gurno v. Town of LaConner*, 65 Wn. App. 218, 223, *review denied*, 119 Wn.2d 1019 (1992).

In this case, the court has determined that there was probable cause to arrest plaintiff for willfully hindering, delaying, or obstructing a law enforcement officer in the discharge of his or her official powers or duties, in violation of RCW 9A.96.020. The existence of probable cause to arrest is a complete defense to plaintiff's claims for false arrest and false imprisonment. Defendants are entitled to summary judgment on these claims, and these claims should be dismissed.

**9. Other State Law Claims**

Plaintiff has alleged state law claims for assault and battery; negligent supervision, training, and hiring; intentional infliction of emotional distress; and negligent infliction of emotional distress.

Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy. The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

All federal claims are being dismissed in this order, as are the state law claims for unlawful arrest and imprisonment, which are precluded by the court's finding of probable cause to arrest. The issues in the remaining state law claims raise issues of state law. The assault and battery claim

involving the alleged unwanted touching of plaintiff's breast is only tangentially related to the federal claims. To the extent that this court's ruling on the federal claims, and on the unlawful arrest and imprisonment claims, may affect the basis for plaintiff's other state law claims–for example intentional and negligent infliction of emotional distress claims–plaintiffs may take this into consideration in pleading those claims in state court. It appears that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims for assault and battery; negligent supervision, training, and hiring; intentional infliction of emotional distress; and negligent infliction of emotional distress. The court should order the parties to show cause why the court should not decline jurisdiction over the remaining state law claims.

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 25) is **GRANTED** in the following respects: Plaintiff's claims under 42 U.S.C. § 1983, 42 U.S.C. 1981, 42 U.S.C. § 1985, against all named and unnamed defendants, are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims for false arrest and false imprisonment against all named and unnamed defendants are **DISMISSED WITH PREJUDICE**. Not later than September 7, 2005, the parties are **ORDERED TO SHOW CAUSE**, if any they may have, in writing, why the court should not decline to exercise supplemental jurisdiction over plaintiff's state law claims for assault and battery; negligent supervision, training, and hiring; intentional infliction of emotional distress; and negligent infliction of emotional distress. If the parties fail to respond to the order to show cause, or if they fail to show cause as directed above herein, the court will decline to exercise supplemental jurisdiction over the remaining state law claims, and will dismiss these claims without prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 29th day of August, 2005.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge